## JOHN S. CAULKINS v. R. H. MATHEWS.

### *Error from Bourbon County.*

1. REAL ESTATE: FEE.—Every person who owns real estate, in fee simple, is the exclusive owner, and entitled to the exclusive possession thereof.

2. TRESPASS.—Any other person who disturbs that possession, by entering upon such real estate, or by allowing his cattle or horses to do so, without the consent of the owner, is a trespasser.

3. ACTION: DILIGENCE.—Every owner of property, before he can maintain an action to recover for injuries to it, must show that he used reasonable, and ordinary care and diligence, to protect it from injury.

4. FENCING, EVIDENCE OF DILIGENCE: VESTED RIGHTS.—While the legislature of this state, by enacting certain fence laws, and laws regulating the running at large of stock, have impliedly declared that such reasonable care and diligence with regard to real estate shall be to fence it with a lawful fence, and that no action shall lie for injuries done by roaming cattle, unless such lawful fence is made; yet, they have nowhere attempted to enact any law giving to any person any rights upon another's land, whether fenced or not; an act of that kind would tend to disturb vested rights, and be unconstitutiona and void.

5. NEGLIGENCE OF BOTH: DEGREES.—It is not necessary in order to enable a party to, recover for injuries to his property, caused by the negligence of others, that he should be entirely free from all negligence himself; but if his negligence is slight and that of the other party is gross, or if his is remote, and that of the other is the proximate cause of the injury, he may recover.

6. DEGREES: QUESTIONS OF LAW AND FACT.—It is a question of fact for the jury to determine, whether there has been negligence, and its nature and degree, but it is a question of law for the court to determine what degree of care and diligence on the one side and of negligence on the other, will entitle the plaintiff to recover.

7. RECOVERY: GROSS NEGLIGENCE.—The plaintiff below allowed his horse to run at large. The horse wandered on the uninclosed land of the defendant, and fell into an old well, which caused his death. *Held*, that the plaintiff cannot recover, unless the defendant was guilty of *gross* negligence in leaving the old well open.

8. CHARGE:—It was error for the court to charge the jury in such a case, that the defendant is liable, if through his failure to exercise *ordinary* care and prudence in the management of his land the horse was killed.[*]

The opinion of the court contains a statement of the facts of the case to which reference is had. It may not be amiss to add here the whole charge given by the court to the jury, which is as follows:

1st.   In the enjoyment, use, and management of his own property it was the duty of the defendant to use and keep it in such condition, and with that ordinary care and prudence which the average and great majority of prudent men exercise in the management of their own lands. And if, by reason of failure or neglect so to use and keep his property, the plaintiff has suffered the injury alleged, without materially contributing to such injury by his own acts or default, the plaintiff should have a verdict, if the other allegations of the petition are proved.

2d.   It is for the jury to say upon the proofs whether the defendant has been guilty of negligence in the premises.

If he left a well, as claimed, opened and exposed, at the place, and under the circumstances alleged, was so doing an act or proceeding in the *prudent and ordinary management* of real estate, situated as this was, and with reference to the adjacent land and country and their ordinary and lawful mode of occupancy.

If you should believe from the evidence that there had been *proper diligence*, that there had been *no negligence*, in

[*]1. HIGHWAY, PASTURAGE OF:—Whether there is a right of pasturage given to the public, when it takes the lands of an individual for a public highway, questioned: Held, that only the right to pass and repass is given.

2. EVIDENCE: CUSTOM.—Custom—as in pasturing cattle upon the unenclosed lands of another, is not admissible as evidence in an action to recover the value of a horse killed while pasturing on the unenclosed lands of the defendant, by falling into a well.

3. U. P. R. W. Co., E. D., vs. Rollins, ante p 167.—confirmed.

the management and use of the lands in the respects alleged, you will find for the defendant.

3d.  But if you find there was *negligence* in the defendant in the matters alleged, you will then enquire whether such negligence was the proximate cause of the injury alleged.  If the defendant's negligence was the proximate cause of the injury, and the plaintiff did not by any act or default of his materially contribute thereto, the defendant is liable, if you find the other alleged facts established.

4th.  It was also the duty of the plaintiff to use *ordinary* prudence and caution in the care and management of his horse.  The court instructs you *that it was not unlawful* for the plaintiff to permit his horse to run at large and depasture upon the unenclosed lands, *commons*, and prairies of the country, unless he was of a class specially prohibited by law from so doing; whether under the circumstances his so doing was an exercise of prudence, or of negligence, is for you to determine.  Did the plaintiff know of the alleged condition of the defendant's premises; *was his horse in the possession of the ordinary faculties* of horses to see and avoid danger?  It is for you to say whether the plaintiff exercised proper prudence and care in permitting him to range at large under the circumstances, and to wander on the defendant's premises.  If you find there was negligence on the part of the plaintiff, which proximately contributed to the injury, the defendant is not liable, but if you believe defendant's default was the proximate cause of the injury, and that the negligence, if any, of the plaintiff did not materially contribute to the injury, then the defendant would be liable, if the other facts of the petition are proved; although some fault may have existed on the part of the plaintiff.

5th.   If there was negligence of the same grade in both parties, contributing mutually to the production of the injury, the plaintiff cannot recover.

6th.   If the cause of the injury was the remote negligence of both parties, mutually and equally occasioning the injury, the plaintiff cannot recover.

*W. C. Webb*, for plaintiff in error.

*A. Danford*, for defendant in error.

*Mr. Webb* submitted :

The defendant below had a right to throw his lands open to the common.   He dug no pit, where the horse had a right to be, and was not negligent.   *Tonawanda R. R. Co. v. Munger*, 5 *Denio*, 266.

1.   Mathews was himself a trespasser; was guilty of negligence; and his own negligence was the proximate cause of his injury—and he cannot recover.   *Bush v. Brainard*, 1 *Cowen*, 78;   *Wells v. Howell*, 19 *Johns.*, 385;   *Tonawanda R. R. Co., v. Munger*, 5 *Denio*, 255;   *Stucke v. Mil. & Mis. R. R. Co.*, 9 *Wis.*, 202, 215.

Courts will not draw the line between contributing acts of negligence in determining their consequences; in such cases neither party can recover from the other for an injury resulting therefrom.   *Catawissa R. R. Co., v. Armstrong*, 49 *Penn. St. R.*, 186;   *Sedgwick on Dam.*, 93, 142, 468;   2 *Kent's Com.*, 286, *notes* 1 *and* 2;   1 *Smith's Lead. Cases*, 310, 311;   *Munger v. Tonawanda R. R. Co.*, 4 *N. Y. Rep.* 449, *affirming judgment in* 5 *Denio*, 255, *above cited.*

2.   The court erred in admitting testimony regarding "the road," mentioned by said witnesses, and the "travel" on or over said road.   No highway was proven—none

existed; and the public had no right to use Caulkins'
land for a " road," or for a " pasture."

It was error, also, to receive evidence with reference
to the " running at large of stock" in the vicinity of
Caulkins' land. An unauthorized and illegal custom does
not convert a wrong into a right.

The common law of England, so far as it is not incon-
sistent with or repugnant to the constitution and laws of
Kansas, was in force in this state in May, 1867.     *Comp.
L.*, '62, *p.* 678, *chap.* 135.

The legislation of 1864, [chap. 34, p. 641,] and 1867,
[chap. 41, p. 69,] authorizing county commissioners to
" issue orders prohibiting stock from running at large in
the night time," did not alter or repeal the common law
requiring every man to keep his cattle on his own
premises at his peril.

If it shall be said that " Caulkins was bound to keep
his own land fenced," the answer is that that rule is
never applied exccept in cases of adjoining land owners,
and as against cattle which were rightfully on the " ad-
joining land."     Mathews does not show any right to, or
over, the adjoining land.    His farm was a mile and a half
distant.   *Note to Bush v. Brainard,* 1 *Cowen,* 85 *to* 91.

3.   The court also erred in the instructions given to
the jury.   The entire charge, as such, is contrary to law.

The court submitted to the jury, as a question of fact,
whether the plaintiff in error was guilty of " negligence"
with reference to the condition and situation of his land.
Upon the facts as shown by Mathews himself, and not
controverted by Caulkins, it became a question of law;
and the court should have told the jury that if they found
the facts as stated by Mathews, Caulkins was entitled to
a verdict.

4. Manifest errors appear in the fourth proposition of the charge.

The court told the jury that it was " not unlawful" for Mathews " to permit his horse to run at large and to pasture upon the unenclosed lands, commons, and prairies of the country." Conceding this to be the law, abstractly considered, it is not applicable to this case, and necessarily misled the jury. It was not a question of horses running at large on the " commons," but of Mathews' right to have his stock on the particular close of Caulkins. " *Common* is a right or privilege which one or more persons claim to take or use in some part or portion of another's lands," etc. "It is called an incorporeal right, which lies in grant, as originally commencing on some agreement between lords and tenants, for some valuable purposes, which by age is ripened into a prescription." *Bacon's Abr., title " Common."*

" It may be claimed by grant made within the time of memory. But being a profit *a prendre* in the soil of another, it cannot be claimed by custom." *So held in Gatewood's case, cited in Bac. Abr., supra, p.* 263.

But if the court meant by the words " unenclosed lands" and " prairies," more than is covered by the word " commons," then the instruction given is not the law. Caulkins' land was " unenclosed," and it may have been, and doubtless was, " prairie" land also. But how and when did Mathews acquire any right to use it, or pasture his stock upon it?

Again: The plaintiff, Mathews, had himself testified that he had frequently passed over Caulkins' land, and for nearly a year had known the exposed condition of the " well." It was error therefore to submit to the jury the question whether Mathews did possess this knowledge;

and still greater error to submit to the jury, as a question of fact, whether, possessing this knowledge, Mathews "exercised proper prudence" in permitting his horse "to range at large and wander on Caulkins' premises." It is not a question of "prudence." Mathews was guilty of gross and culpable negligence, and the court should have so instructed the jury, as matter of law, upon the facts as stated by Mathews himself. *Munroe v. Leach,* 7 *Metcalf,* 274.

5. The court erred in the third instruction as given. It is in direct conflict with the law as stated in "Catawissa R. R. Co., v. Armstrong, 49 Penn. St. R., 193," before cited.

"The law has no scales to determine in cases of contributing acts of negligence, whose wrong doing weighed most in the compound that occasioned the mischief." *Little Schuyl. Nav. Co. v. Norton,* 12 *Harris,* 465.

But if this court should determine that Caulkins was guilty of negligence in permitting the "well" on his land to remain open and unprotected by fencing or curbing, then, with reference to the injury complained of, Caulkins' negligence was the remote, and Mathews' negligence was the immediate and proximate cause of such injury, and there can be no recovery. "A plaintiff suing for negligence must himself be without fault." *Stucke v. Mil. & M. R. R. Co.,* 9 *Wis.,* 217, *and cases cited; Parker v. Adams,* 12 *Metcalf,* 415; *Brown v. Maxwell,* 6 *Hill,* 592; *Button v. Hudson R. R. Co.,* 18 *N. Y. Rep.,* 248.

*For the defendant in error,* no brief has come into the hands of the reporter.

*By the Court,* VALENTINE, J.

The action below was brought by the defendant in

error as plaintiff, to recover the value of a horse, which, while grazing and ranging upon the uninclosed lands of the plaintiff in error, who was defendant below, "slipped and fell into a hole or well and was killed."

The record shows that in May, 1867, the defendant below was the owner of a quarter section of land in Bourbon county, within one mile and a half of Fort Scott, which land he had owned for six or seven years, and upon which he resided at the commencement of the war. At that time his house and well and a few acres of the land were enclosed with a fence, but afterwards, and during the war, he removed to Leavenworth county, and did not return to the land until after the horse was found dead in the well. While he was absent from Bourbon county, and some two or three years before the horse's death, the fences were destroyed, and there was no enclosure left to prevent stock from falling into the well. There was no road legally established on or adjoining the defendant's land, but the public travel from Fort Scott, south, was on or near the defendant's land, and within from forty to sixty feet east of the well.

In May, 1867, Mathews occupied a farm, not adjoining, but a mile distant from Caulkin's land; Mathews owned a horse, blind of an eye, which he permitted to run at large and range and graze with his other stock upon the unenclosed prairies of that vicinity. The horse had been running at large about a month, but had been seen alive only a few days before he was found dead in the well.

It is the custom in that place to allow stock to run at large on the defendant's land and on other unenclosed lands in that vicinity. Mathews had frequently been on Caulkin's land, and had known for nearly a year the condition of the well.

· Whether Caulkins knew the condition of the premises or not, is not disclosed by the record, but for the purposes of this case we will assume that he did know it.

There are a great many assignments of error in this case, but we think the record raises nearly the precise questions that were raised in the case of the U. P. Railway Co., E. D. v. Rollins & Thompson [*ante*, p. 167] decided at this term; hence we will refer to that case for a full discussion and decision of the questions involved in this case.

This case, as that, was tried upon the erroneous theory that the plaintiff had a *right* to pasture his stock upon the unenclosed lands of the defendant; and, as a necessary corollary that the defendant was bound to use ordinary care and prudence in the management of his land, so as to protect the plaintiff's stock from injury while so pasturing there; and to this cause is probably referable all the errors committed by the court below in this case.

In view of this theory, and in order, as it seems, to prove the right of the plaintiff to pasture on the defendant's land, the court admitted testimony tending to show the custom of the country in that vicinity to pasture on the unenclosed lands generally, and the defendant's land in particular, and also testimony tending to show the existence of a public road on or near the defendant's land.

Neither are admissible in this case for that purpose. No unauthorized or illegal custom can convert a wrong into a right; and how a public road on the defendant's land would give the plaintiff any right to pasture his horse outside of the road we cannot see. It is questionable even whether the plaintiff would have any right to pasture his horse in the road itself. It is hardly to be supposed that the legislature, by authorizing

EVIDENCE: Custom: Highway.

the laying out and establishing of roads and highways, or even by passing laws regulating the running at large of stock, intended thereby to make public pasture fields of the public highways; and it is very questionable whether they have the right to do so, even if they should so desire. Such an act would at least be a very novel exercise of the right of eminent domain. Men may pass and repass with their stock upon the public highways, but we think that that is the extent of their right. [*Stackpole v. Headly,* 16 *Mass.,* 33; *Cortelyon v. Brundt,* 2 *Johns.,* 357, *and cases there cited; Holaday v. Marsh,* 3 *Wend.,* 142; *Bush v. Brainard,* 1 *Cowen,* 85 *to* 91, *note; Towns v. Cheshire R. R. Co.,* 1 *Foster, N. H.,* 363; 2 *Mich.,* 259; *Bowman v. The Troy and Boston R. R. Co.,* 37 *Barb.,* 516.] We do not decide that this kind of evidence might not in a proper case and for a different purpose be admissible.

We can see no good or valid reason why the court below should not have given the instructions to the jury prayed for by the defendant. We have doubts whether the evidence, as it appears before us, proved any case against the defendant. We have doubts as to whether it shows any negligence on the part of the defendant with reference to the plaintiff, but we do not think it was such a clear case, as would warrant the court below in taking the case from the jury by instructing them to find for the defendant, the jury being the judges of the facts and of what the evidence proves and what it disproves.

The charge as embodied in the first, second, third and fourth instructions was erroneous. The court substantially charged that the defendant should exercise *ordinary* care and prudence in the management of his property, and that he would be liable *for any* negligence in the use thereof, which is not the law for this case. The

defendant at most could be held only for *slight* care and prudence, and be liable only for *gross* negligence. The court generally uses the word negligence without any qualifying adjective. Now, allowing that the word used in that way would mean ordinary negligence, still the charge would be erroneous; for the defendant is not in a case like this, liable for ordinary negligence; but in the second instruction the court charged that "If the jury should believe from the evidence, that there had been proper diligence, on the part of the defendant, that there had been *no negligence*, on his part, in the management and use of the lands, in the respects alleged, they will find for the defendant." The charge in the fourth instruction, " that it was not unlawful for the plaintiff to permit his horse to run at large, and to pasture upon the unenclosed lands, commons, and prairies of the country," while, in a proper case, may be good law, yet in this case it was calculated to mislead the jury, conveying to them the idea that it was *right* for the plaintiff to pasture his horse on the defendant's land.

The other instructions in the case were, as we think, properly given. We would refer to the cases cited in the case of the U. P. R. W. Co. v. Rollins & Thompson, decided at this term, and also to the following cases: Blythe v. Topham, Cro. Jac., 158 ; Knight v. Toledo and Wabash R. R. Co., 24 Ind., 402; Aurora Branch R. R. Co., v. Grimes, 13 Ill., 585.

The court below also erred in refusing to set aside the verdict and grant a new trial. The judgment is therefore reversed, and the cause remanded with the order that the court below grant a new trial, and proceed in the case as though no trial had been had therein.

All the justices concurring.